Louis FEINGLASS

v.

UNITED STATES of America.

Civ. No. 9926.

United States District Court
D. Maryland.

Oct. 13, 1959.

Leroy W. Preston and David K. Ebersole, Jr., Baltimore, Md., for plaintiff.

Leon H. A. Pierson, U. S. Atty., and John R. Hargrove, Asst. U. S. Atty., Baltimore, Md., for defendant.

THOMSEN, Chief Judge.

In this action under the Tort Claims Act, 28 U.S.C.A. §§ 1346, 2671–2680, the principal issue is damages.

On Saturday, February 11, 1956, plaintiff, a clerk in the Postal Transportation Service, age 44, was driving his 1954 Plymouth automobile north on Park Avenue in a line of traffic approaching Mulberry Street, in Baltimore City. It was raining. Plaintiff applied his brakes to stop for a red light, and when six or eight feet from the car in front, his car was struck in the rear by an automobile negligently driven by another employee of the United States in the course of his employment, and was caused to strike the car in front. The impact was not severe; plaintiff's 17 year old daughter, who was sitting beside him, was not hurt; plaintiff sustained a low-back strain, which caused some immediate pain, but he got out of his car, talked to the other drivers and a police officer, refused medical attention, and drove home.

Plaintiff had some pain that evening; he worked as usual on Monday, but the pain became more severe Monday night. Plaintiff had suffered a low-back strain three years before, which had responded to treatment by an osteopath; he returned to the same osteopath on Tuesday, and received three treatments which gave him considerable relief. He testified that he did not work on Tuesday or Wednesday, but his employment records show no lost time.

He made claim against the government for his injury and the damage ($146.49) to his car, and was sent to the U.S.P.H.S. Hospital on February 23 for a physical examination. Dr. Dunford,

a surgical resident, examined him and found moderate spasm of the perivertebral musculature on the left, with some tenderness in the lumbar spine. The diagnosis was acute lumbar strain, and Dr. Dunford noted that the prognosis for a complete cure was excellent.

As part of the examination an x-ray was taken, which showed a localized area of Paget's disease in the pelvis in the area of the right hip. Dr. Dunford told plaintiff that he had this condition, of which plaintiff had been unaware. In response to questioning by plaintiff, Dr. Dunford told him that Paget's disease is a chronic disease of the bone, for which no cure is known.

Plaintiff testified that Dr. Dunford told him that Paget's disease is progressive, that his legs are going to bow, and that his feet and head are going to become enlarged, and gave him the impression that he will be a monstrosity before he dies. I do not believe this testimony.

Plaintiff has always been of a nervous temperament, and he was quite upset when he was told that he had an incurable disease. He went promptly to his personal physician, Dr. L. E. Little, who tried to assure plaintiff that his Paget's disease was not likely to have serious results, but plaintiff continued to worry.

Plaintiff was admitted to the Maryland General Hospital on March 14, 1956, for hemorrhoids and a rectal polyp. In the history he gave on admission, plaintiff said that he "had been suffering from back pains for several years", but said nothing about the accident. X-rays were taken which showed early Paget's disease in the pelvis, involving the right ischium and pubis, but not elsewhere in the body. Plaintiff's counsel suggests that the admission to the hospital in March, 1956, was really for his back, and not for hemorrhoids, and that the latter reason was given so that Blue Cross would pay the bill which it would not otherwise have done. Plaintiff did not call Dr. Little as a witness. Dr. Little decided not to operate on the hemorrhoids at that time; plaintiff left the hospital on March 28 and returned to work on April 2.

Dr. Little called in Dr. N. P. Byerly to treat the Paget's disease. Dr. Byerly found, in addition to the Paget's disease, that plaintiff was still suffering from his lower back strain, and had some arthritis in the upper back. He prescribed medicine for the Paget's disease, the use of a mattress board, and a support, which plaintiff wore for some time, until chafing around the hips became uncomfortable.

In June, 1956, plaintiff was examined by Dr. Eli Lippman, Chief of the Orthopedic Service at the U.S.P.H.S. Hospital, who found that the strain had subsided and that plaintiff had no "residuals" of the accident. Plaintiff complained of pain in the back and left hip, but the doctor found no muscle spasm, which he testified would have been present if there had been any physical basis for the complaints.

In February, 1957, Dr. Byerly sent plaintiff to the late Dr. Henry F. Ullrich, an orthopedic specialist, "not so much for his back as for worrying about Paget's disease". Dr. Ullrich's report stated that plaintiff said he had had "some pain" in the lower portion of the back since the accident; that "the pain of which he complains is chiefly in his pelvis and left and right hip areas; at the present time, his degree of pain is not too great and he is able to pursue the duties of his occupation without too great a degree of discomfort." Dr. Ullrich did not report any objective findings, but concluded: "The presence of the Paget's disease underlying his skeleton may well protract the symptoms of which he complains more than they would have been protracted had he not had this condition." A day or two after his visit to Dr. Ullrich, plaintiff had a sharp pain in his back. He telephoned Dr. Ullrich, who told him to go to bed, but he saw no doctor. He was away from work for six days. Later in 1957, plaintiff was readmitted to the Maryland General Hospital and operated on for hemorrhoids. He made no complaint about his back.

Dr. Byerly saw plaintiff four times in 1957; plaintiff has not consulted any doc-

tor since 1957. No doctor testified that the strain aggravated the Paget's disease; plaintiff's counsel concedes that it did not. The Paget's disease has not progressed since the accident.

For more than two years after the accident, plaintiff's work required him to lift fairly heavy mail bags. He never asked to be relieved of this duty or to be shifted to another job. Because of the termination of the B & O's Washington-Jersey City run in 1958, plaintiff has been given a new job, which does not require lifting. Plaintiff had been athletic all his life, and had been an active golfer. He has played some golf since the accident, and won a handicap tournament, but complains of pain when walking uphill.

He was examined for the government by Dr. E. David Weinberg, an orthopedic specialist, several weeks before the trial. Dr. Weinberg found no objective evidence to support plaintiff's complaints.

Plaintiff's sworn statement ten days after the accident, the several hospital records, the doctors' reports, and other evidence contradict plaintiff's testimony in several material respects, and I am convinced that his testimony as to his pains is exaggerated, partly consciously and party unconsciously. He has no permanent disability as a result of the accident.

Plaintiff had a weak back, which had been strained before. The strain he received in the accident was not severe; all objective symptoms had disappeared within four months. Plaintiff lost little or no time from work as a result of the accident. He paid $35 to the osteopath, $70 for x-rays, which were principally for his Paget's disease though partly for his back, $70 to Dr. Byerly, and $15 to Dr. Ullrich. His admissions to the hospital were not caused by his back condition.

Plaintiff contends that he became a nervous and physical wreck as a result of the picture of Paget's disease which Dr. Dunford painted for him. I have found

that plaintiff's version of his conversation with Dr. Dunford is not true. If it were, plaintiff could not recover damages from defendant for the alleged result of that conversation. It would not have been a foreseeable result of the negligence of the automobile driver, or of the injury sustained in the accident. Maryland has followed the Restatement of the Law of Torts on such matters, and the Restatement indicates that such damages are not recoverable. Restatement, Torts, sec. 454, sec. 457 comment (e), sec. 435; 1948 Supp., sec. 435(2) and comment (c).

Dr. Dunford did tell plaintiff that he had Paget's disease and, in effect, that the disease is incurable. Those statements were true; they were made in the course of an examination arranged by defendant and caused plaintiff considerable worry. Plaintiff cites Ferrara v. Galluchio, 5 N.Y.2d 16, 176 N.Y.S.2d 996, 152 N.E.2d 249, which allowed damages for worry about the possibility of cancer as the result of an injury, where the plaintiff testified that she had been told of such possibility during the course of her treatment for the injury. In Ferrara v. Galluchio, the worry was about a condition caused by the injury; in the instant case, the Paget's disease was neither caused nor aggravated by the injury. Moreover, I do not believe that the Court of Appeals of Maryland would follow the majority opinion in Ferrara v. Galluchio. For the reasons set out in the sections of the Restatement cited above, I conclude that plaintiff cannot recover for his worry about his Paget's disease.

He may recover for the protraction of his symptoms—his pain—as a result of his greater awareness of his pain after he learned about his Paget's disease, and such additional strain as may have been placed on his back by favoring his hip before his back strain was fully healed. Restatement, Torts, sec. 460.

Let judgment be entered in favor of the plaintiff for $1,250, with costs.