**Ernest J. HENDRY, Plaintiff,**

v.

**UNITED STATES of America,
Defendant.**

**No. 63 Civ. 1881.**

United States District Court
S. D. New York.

Feb. 23, 1968.

John R. Harold, New York City, for plaintiff.

Robert M. Morgenthau, U. S. Atty. for Southern District of New York, by Alan G. Blumberg, New York City, of counsel, for defendant.

## OPINION

POLLACK, District Judge.

The plaintiff, a licensed seaman in the United States Merchant Marine, seeks damages under the Federal Tort Claims Act, Title 28 U.S.C. § 1346(b), § 2672 et seq., alleging negligence and malpractice of a psychiatrist and of a psychologist,

both employed by the United States Public Health Service Hospital at Staten Island, New York. He was referred there by the U. S. Coast Guard under its licensing powers to determine his mental fitness for sea duty. He alleges that as a result of faulty diagnosis he was declared "NOT FIT FOR SEA DUTY" and consequently was deprived by the Coast Guard of his license to work at sea from April until early in July, 1962. He was prevented thereby from obtaining employment during that period, and asserts that his earning capacity was impaired thereafter.

He seeks further recovery for emotional and mental upset caused by his loss of license and by disclosure to him of the factual reasons for the conclusions of the psychiatrist and of the psychologist concerning his mental condition. The findings and conclusions of the psychologist and of the psychiatrist were entered in the hospital records which were confidential and not disclosed by the government employees to the plaintiff. However when the plaintiff protested the loss of his license and employed counsel, the records were procured by counsel and the detailed findings of the doctors disclosed to plaintiff by counsel or by the psychiatrist retained by the plaintiff to review his mental condition. The damages sought total $50,-000.

The defendant United States of America denies malpractice and negligence of its employees and at the outset of the trial moved for dismissal of the suit on the grounds that the plaintiff's claim arose out of a "discretionary function" of a government agency or employee and/or that the claim arose out of "interference with contract rights" and therefore falls under exceptions contained in 28 U.S.C. §§ 2680(a) and 2680(h), respectively, to the government's consent to be sued in tort.

Federal jurisdiction of this case is posited upon 28 U.S.C. § 1346. The case was tried to the Court, sitting without a jury and the relevant facts are as follows.

The plaintiff was licensed as a deck officer of the United States Merchant Marine by the United States Coast Guard pursuant to statutory authority contained in Title 46 U.S.C. § 224.

In March, 1962 the plaintiff, while serving aboard the oil tanker, *Samuel L. Fuller*, complained to the Coast Guard in Philadelphia that he had been assaulted and threatened by the Captain of his vessel. A Coast Guard investigating officer interviewed the plaintiff upon the ship's entry into port, found that his complaint groundless, and that the plaintiff had "a history of registering complaints" and was generally considered a "troublemaker". Upon the officer's request, the plaintiff voluntarily agreed to deposit his seaman's license with the Coast Guard "until such time as I am declared fit for sea duty by the U. S. Public Health Service". He further agreed that "pending my certification as fit for sea duty, I will not accept employment on any merchant vessel of the United States".

Under the regulations then in effect, 46 C.F.R. §§ 137.01–1, 137.05–15, 42 U.S.C. § 251(c), 42 C.F.R. § 32(6) (c) (6)iii, the Coast Guard investigating officer was empowered but not required to accept deposit of the plaintiff's license and to refer the plaintiff to the Public Health Service for examination. Upon certification by the Public Health Service that plaintiff was fit for duty, the Coast Guard was required to return the plaintiff's license.

Pursuant to these regulations, the plaintiff underwent psychiatric examination at the United States Public Health Service Hospital on Staten Island.

On April 5, 1962, the plaintiff was examined by Dr. Carlos Ramirez, a Cuban doctor who had practiced psychiatry and neurology in Havana for nineteen years, and who was certified by the Education Council for Foreign Medical Graduates for practice in the United States.

The plaintiff related the history of his dispute with his ship's captain, categorizing it as violent and intense. He gave his medical history and family back-

ground. Following the interview, which lasted approximately 45 minutes, Dr. Ramirez entered the following on the hospital records:

"This is the case of a man 42 years, married, working in the Merchant Marine. This man is in a special situation because he had a trouble with his boss. They had an intense and violent disagreement. His intelligence is normal. Ideas are well coordinated. Reasonable. Emotional normal. Connation normal. Sleep O.K. Diagnostic-normality?. Normality apparently in his family."

At the time of his clinical examination Dr. Ramirez suspected that the plaintiff had a phychiatric problem involving a personality disturbance. He therefore put a question mark after the word "normality" in the record entry which is quoted above. However, since he had at that time no conclusive evidence to support his suspicion, he issued a medical status report dated April 5, 1962 declaring plaintiff "fit for duty psychiatrically".

The next day, April 6, 1962, there was forwarded to Dr. Ramirez a copy of a report from the United States Coast Guard dated March 23, 1962 addressed to the Medical Officer in charge of the hospital to the attention of the Psychiatric Service in relation to the plaintiff. This report enclosed a copy of the voluntary surrender agreement with respect to the plaintiff's license and certain letters written by the plaintiff dated March 16, 18, 20, 1962 sent to the Coast Guard. Upon receipt of these documents Dr. Ramirez promptly referred the plaintiff to the hospital's clinical psychologist, Dr. Joseph Feuerburgh, and the plaintiff was directed by the Coast Guard to return to the hospital for further examination.

Dr. Feuerburgh examined the plaintiff on April 9, 1962 administering a battery of psychological tests, including the Rorschach test. (This is a type of intelligence test which also evaluates the emotional elements of the subject's personality. The subject is presented with a series of ink blot patterns and asked to tell what they mean or represent to him.). The psychologist recorded the plaintiff's responses to the various tests and prepared a report of his findings which he transmitted to Dr. Ramirez, the psychiatrist. The report noted that the Rorschach protocol

"seems to be consistent with a latent paranoid thinking disorder. * * * from the record this is a man who has difficulty in getting along with people. * * * we have evidence of a pattern of responses consistent with a paranoid schizophrenic condition * * * (he) does not show the ego defenses to be able to be regarded as now suitable for active duty. * * * he should be encouraged to seek psychotherapy."

Dr. Ramirez, after reviewing Dr. Feuerburgh's report and giving consideration to his own clinical examination of the plaintiff as well as the data in the Coast Guard report, made the following entry on the hospital records on April 12, 1962:

"Due to his difficulty to get along with his boss and also with others I ordered a psychologic evaluation and it was discovered a good intellectual level, good defenses, but suffering from a paranoid schizophrenic condition. He is not considered fit for duty in one year that he should return for a new evaluation. Dr. Carlos E. Ramirez."

Dr. Ramirez then filled out a medical report of the plaintiff's duty status reciting the dates of the examinations and stating simply "patient is not fit for sea duty he may be re-evaluated in 6 months".

On receipt of this report the Coast Guard declined to restore the plaintiff's license to him.

The plaintiff protested and enlisted the support of his Union representatives, retained counsel, and obtained an examination by a private psychiatrist who disagreed with the conclusions of reports of the employees of the United States Public Health Service and indicated that plaintiff was not emotionally unsound or suffering any personality disorder.

Armed with these, the plaintiff procured a reexamination by the chief of the psychiatric service, Dr. Paul Smith, on July 6, 1962. His findings in part are as follows:

"After a complete review of the available documents and the information of all sorts already available in our clinical record, it is my opinion that an appropriate diagnostic label for this man would be a paranoid personality. He shows the sensitivity, the suspiciousness, the stubbornness and the tendency to utilize the mechanism of projection, characteristic of such a personality type. I do not believe however, that his psychological state is disabling at this time nor does it seem likely to become so in the foreseeable future. He is accordingly fit for duty at sea psychiatrically."

"Paranoid personality" does not refer to brain disease; it refers to a behavioral disturbance; it is not a psychosis; it is not a mental disease or insanity. It refers to a behavior pattern of anger, difficulty to get along with others and would include a chronic letter writer.

At the trial, Dr. Smith testified that he was generally rather lenient in permitting men with what he termed personality disorders to continue working at sea. Shortly after Dr. Smith's medical status report, the plaintiff's license was returned by the Coast Guard and he went back to work at sea.

No satisfactory evidence was adduced at the trial of any impaired earning capacity of the plaintiff after the restoration of his license. The plaintiff did testify that he suffered mental upset as a result of viewing Dr. Feuerburgh's report which had been obtained as indicated above although it was plainly marked "Confidential not to be released to patient or relatives".

At the outset of the trial, the United States moved to dismiss the complaint for insufficiency, pursuant to Rule 12(b) (1) and (6), Fed.R.Civ.P., on the grounds that Title 28 U.S.C. § 2680 of the Federal Tort Claims Act was applicable and barred the plaintiff's claim. Decision on the motion was reserved. 28 U.S.C. § 2680 reads, in pertinent part:

"The provisions of this chapter and section 1346(b) of this title shall not apply to—

(a) Any claim based upon * * * the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

\* \* \* \* \* \*

(h) Any claim arising out of * * * interference with contract rights."

\* \* \* \* \* \*

As to subsection (a) the government contended that the complaint actually states a claim for the wrongful failure of the defendant to restore the plaintiff's license; that it was the absence of a license which was the proximate cause of the plaintiff's injury and not negligent treatment administered by Government physicians. While the complaint is cast in the language of malpractice or negligence of Government employees, torts not per se exempted under 28 U.S.C. § 2680(a), the Court must penetrate the pleadings and determine the actual cause of action. Blitz v. Boog, 328 F.2d 596, 598–599 (2d Cir. 1964), cert. denied, 379 U.S. 855, 85 S.Ct. 106, 13 L.Ed.2d 58; Klein v. United States, 268 F.2d 63, 64 (2d Cir. 1959); Rufino v. United States, 126 F.Supp. 132 (S.D.N.Y.1954); Duenges v. United States, 114 F.Supp. 751 (S.D.N.Y.1953). Thus, for example, where a complaint recites the negligence of government employees in maintaining the plaintiff's records, leading to his involuntary confinement, the "very gist and essence" of the complaint was found to be false imprisonment, and exempted under 28 U.S.C. § 2680(h). Duenges v. United States, supra.

■ The grant or revocation of a license by a federal agency or employee generally involves the exercise of dis-

cretion, within the meaning of 28 U.S.C. § 2680(a). Dupree v. United States, 247 F.2d 819, 825 (3d Cir. 1957); United States v. Morrell, 331 F.2d 498 (10th Cir. 1964), cert. denied, 379 U.S. 879, 85 S.Ct. 146, 13 L.Ed.2d 86.[1] Only where licensure is mandatory, "provided * * * that the normal qualifications were met by the applicant" [Pennsylvania Railroad v. United States, 124 F.Supp. 52, 64 (D.N.J.1954)], have the courts refused to exempt the United States from liability for negligence in relation to the licensing process.

■ In *granting or revoking seamen's* licenses, the Coast Guard is charged with "maintain[ing] standards of competence and conduct essential * * * to promote the safety of life and property at sea by insuring that the licensed * * * persons continue to be qualified to carry out their duties and responsibilities." 46 C.F.R. 137.01–20. Such a function, of necessity, involves the exercise of discretion. Cf., Dupree v. United States, supra. "Where there is room for policy judgment and decision there is discretion". Dalehite v. United States, 346 U.S. 15, 36, 73 S.Ct. 956, 968, 97 L.Ed. 1427 (1953), rehearing denied, 347 U.S. 924, 74 S.Ct. 511, 98 L.Ed. 1078 (1954).

The plaintiff contends, however, that this discretionary function was exercised by the investigating officer of the Coast Guard when he determined to accept the plaintiff's voluntary deposit of his license (pursuant to 46 C.F.R. § 137.05–15(4)), thereby leaving to the determination of the Public Health Service the certification of plaintiff as fit or unfit for sea duty; that having determined in advance to accept the certification of the Public Health Service, the Coast Guard had no further discretionary function with respect to the restoration of plaintiff's license. Indian Towing Co. v. United States, 350 U.S. 61, 76 S.Ct. 122, 100 L.Ed. 48 (1955).

In support of his contention, the plaintiff cites numerous cases involving medical malpractice, in which it was held that once a government agency exercises its discretion to accept a patient for treatment, the agency is bound to use reasonable care with respect to the patient's treatment. Costley v. United States, 181 F.2d 723 (5th Cir. 1950), Rufino v. United States, 126 F.Supp. 132 (S.D.N.Y.1954). These cases, as well as *Indian Towing,* supra, hold that where a person relies upon the discretionary assumption of authority by the government, the government must exercise such authority with due care.

In the instant case, the plaintiff was, at all times, subject to the licensing function and authority of the Coast Guard. Whether the investigation of his qualifications had proceeded through administrative channels, commencing with the lodging of charges against him, or, as here, more directly, by reference to the Public Health Service, the plaintiff continued to be subject to the *licensing* process. The result of whatever investigatory procedure was applicable, conducted by whoever was qualified, was the same: the determination within the context of the general policy of the regulations (supra), of the plaintiff's fitness for sea duty. That this determination was made by a medical officer, rather than an administrator of the Coast Guard does not alter the essential nature of the decision.

"There is no litmus paper test to distinguish acts of discretion, * * * and to require a finding of 'discretion' would merely postpone, for one step in the process of reasoning, the determination of the real question—is the act complained of the result of a judgment or decision which it is necessary that the Government official be free to make without fear or threat of vexatious or fictitious suits and alleged personal liability?" Ove Gustavsson C. Co. v. Floete, 299 F.2d 655, 659 (2d Cir. 1962), cert. denied, 374 U.S. 827, 83 S.Ct. 1862, 10 L.Ed.2d 1050 (1963); quoted with approval in Blitz v. Boog,

---

1. One of several cases relating to the exercise of discretion in granting permits under the Taylor Grazing Act.

328 F.2d 596, 599 (2d Cir. 1964), cert. denied, 379 U.S. 855, 85 S.Ct. 106, 13 L.Ed.2d 58.

■ The responsibility for decisions relating to licensure or revocation of licenses of seamen lies with the Coast Guard. In exercising its responsibility, the Coast Guard must be free to rely upon whatever expert guidance it reasonably chooses. To hold that in determining the medical fitness of a seaman the Coast Guard cannot rely upon the opinion of a Government psychiatrist, is to deny the Coast Guard and the Government the protection of the discretionary function exception of 28 U.S.C. § 2680 (a). Fear of lawsuit might in the future, impel the Coast Guard to render its own decision without the benefit of such guidance, a result clearly detrimental to the effective exercise of its discretion and responsibility.

The discretionary nature of the determination made herein is particularly emphasized by the nature of the expertise involved.

"The diagnosis of mental cases is not an exact science. As yet the mind cannot be X-rayed like a bone fracture. Diagnosis with absolute precision and certainty is impossible. * * *

" * * * Future human behavior is unpredictable, * * *" St. George v. State of New York, 283 App.Div. 245, 248, 127 N.Y.S.2d 147, 150 (3d Dep't 1954), aff'd, 308 N.Y. 681, 124 N.E.2d 320 (1954); quoted with approval in Fahey v. United States, 153 F.Supp. 878, 885 (S.D.N.Y.1957).

In *Fahey*, supra, plaintiffs sued for the death of their intestate, who was killed by a veteran whom the government negligently failed to confine in a veterans' administration hospital for psychiatric treatment. Judge Levet said, in dictum, that where psychiatrists were

"retained to make professional diagnoses and if any error was committed it was an error in the exercise of their authorized discretion resulting from an improper diagnosis. Such conduct is clearly within the scope of

the exception and clearly not actionable. * * * '[I]t is not material whether the agency or the employee used reasonable care in ascertaining the facts on which such a judgment was founded, * * *.'" (at p. 886 of 153 F.Supp.)

Numerous cases have found medical judgments or mixed medical and administrative judgments of psychiatrists immune from suit under 28 U.S.C. § 2680 (a). Blitz v. Boog, supra; Dugan v. United States, 147 F.Supp. 674 (D.D.C. 1956); Smart v. United States, 207 F.2d 841, 843 (10 Cir. 1953); Kendrick v. United States, 82 F.Supp. 430 (N.D.Ala. 1949).

It is unnecessary here to determine whether the Government's waiver of immunity under the Federal Tort Claims Act extends to malpractice or negligence of a government psychiatrist in all situations.

■ An opinion of a psychiatrist on the medical fitness of a person for sea duty is a judgment which is an integral part of the exercise of a discretionary function of the Coast Guard in safeguarding marine navigation by licensing for sea duty only those who measure up to its standards of safety. It is a discretionary decision.

■ The government's contention that the complaint states a claim for interference with contract rights and is therefore excluded by 28 U.S.C. § 2680 from suit under the Act is rejected. Under the Federal Tort Claims Act, the Court must apply the rule of law of the place where the act or omission occurred. 28 U.S.C. § 1346. Accordingly New York law is applicable here. In New York, an action for interference with contract rights must be based upon intentional and knowing interference, "for unworthy or selfish purposes" with the contractual rights of the plaintiff. It is an intentional tort and requires malice. Campbell v. Gates, 236 N.Y. 457, 141 N.E. 914 (1923).

■ The Government's motion to dismiss the complaint as falling under the

exception of § 2680(a), alone, is therefore granted. However, because the case proceeded to trial, and because the area of the "discretionary function" exception to the Tort Claims Act is unsettled in federal jurisprudence, the following constitutes the Court's further findings of fact and conclusions of law with respect to the merits of the plaintiff's claim.

The standards for determining negligence or malpractice of a physician have frequently been expressed by the Courts.

In *Stone v. Goodman*, 241 App.Div. 290, 271 N.Y.S. 500 (1st Dep't 1934), the Court expressed the New York rule with respect to malpractice thus:

"The rule requiring a physician and surgeon to use his best judgment does not make him liable for a mere error of judgment, provided he does what he thinks is the best after careful examination. A physician's and surgeon's implied engagement with his patient does not guarantee a good result, but he promises by implication to use the skill and learning of the average physician, to exercise reasonable care and to exert his best judgment * * *." (p. 295, 271 N.Y.S. p. 507)

In *Schwenk v. State of New York*, 205 Misc. 407, 129 N.Y.S.2d 92 (Ct. Claims 1953) in which the plaintiff alleged malpractice by a psychiatrist, the Court said:

"The rule requiring him to use his best judgment does not hold him liable for a mere error in judgment provided he does what he thinks is best after careful examination. (Carpenter v. Blake, 75 N.Y. 12; Link v. Sheldon, 136 N.Y. 1, 32 N.E. 696; Pike v. Honsinger, 155 N.Y. 201, 49 N.E. 760; Kinsley v. Carravetta, 244 App. Div. 213, 279 N.Y.S. 29, affirmed 273 N.Y. 559, 7 N.E.2d 691)" (p. 414, 129 N.Y.S.2d p. 99)

The factual question for decision, therefore, is whether the doctors who examined the plaintiff made a "careful examination".

The plaintiff ascribes malpractice to Dr. Ramirez for failure to reexamine him prior to the April 12 entry on the hospital record classifying him as "not * * * fit for duty." The plaintiff contends that Dr. Ramirez erroneously relied entirely upon the report of the psychologist, Dr. Feuerburgh, in which the plaintiff was referred to as a "paranoid schizophrenic individual" and that Dr. Feuerburgh was not competent to make such an evaluation since Dr. Feuerburgh's field of competence extended only to giving psychological tests and interpreting the results of those tests.

The evidence clearly indicated that Dr. Ramirez' conclusion that plaintiff was not fit for duty was not based solely upon Dr. Feuerburgh's report. Dr. Ramirez had examined the plaintiff clinically and had indicated doubts on the hospital record which he repeated at the trial, as to the plaintiff's "normality". These doubts were heightened the day following the clinical examination when Dr. Ramirez received the Coast Guard report and letters on the March 16, 1962 incident with the Captain and plaintiff's history of unsubstantiated complaints. Accompanying the report were copies of a number of handwritten letters that plaintiff had lodged with the Coast Guard. These documents confirmed the prior suspicion of possible behavioral problems and on the strength of this additional evidence, although he had already issued a medical status report that plaintiff was fit for duty, he had the plaintiff recalled to the hospital and sent to Dr. Feuerburgh for psychological testing. Dr. Ramirez made an entry on the hospital record of this referral reading "4-6-62. Sent to Dr. Feuerburgh. Dr. Ramirez." [2]

Upon receipt of Dr. Feuerburgh's report, Dr. Ramirez was possessed of a

---

**2.** There is no convincing support in the evidence for plaintiff's contention that Dr. Ramirez' hospital entries were in fact made at a date later than the date appearing thereon.

sufficient body of information and opinion concerning the plaintiff to enable him to apply retrospectively the experience of the clinical examination and to reach the *conclusion* that the plaintiff was unfit for duty.

While it is true that Dr. Feuerburgh's characterization of the plaintiff as a paranoid schizophrenic could not in any sense be considered a medical judgment, there is no evidence that it was relied on as such by Dr. Ramirez. There was testimony at the trial to the effect that, as between a psychiatrist and a psychologist who, like these two men, had a close working relationship, the use of medical and other technical terms by the psychologist was considered in proper perspective in the psychiatrist's evaluation of the psychologist's report.

Further, the head of the psychiatric department, Dr. Smith, who stamped the plaintiff fit for duty three months later, testified at the trial, that the psychologist's classification of plaintiff as "paranoid schizophrenic" was, in his opinion, substantially correct.

The postulate on which plaintiff predicates recovery—that the defendant was negligent because its agents acted in a careless manner in making a medical diagnosis and conclusion causing plaintiff to be improperly branded as psychotic— finds no support in the evidence. None of the doctors who examined the plaintiff believed him to be psychotic or mentally diseased but rather believed that he suffered from a personality disorder which affected his behavior and interpersonal relationships. This was the meaning of the finding that the plaintiff was suffering psychiatrically and was therefore unfit for sea duty. This, as stated *supra*, meant no more than a personality disorder—a defect which might or would make his presence on a ship a disturbing influence to the operations of the vessel. The reports did not stamp plaintiff as psychotic—mentally diseased. Indeed the restoration of his license some three months later negates the plaintiff's contention to the contrary. He was classed as "psychiatrically fit for duty" at that time.

This meant that his emotional and personality disturbance were in the opinion of the examining physician at a level of noninterference with his obligations and functions in sea duty.

Plaintiff next contends that Dr. Feuerburgh's report was negligently prepared in that it took into account factors other than the plaintiff's responses to the psychological tests which were administered; and that the report of the Coast Guard and fellow members of the plaintiff's crew were relied upon without giving plaintiff an opportunity to refute these statements. There was no evidence, however, that a psychologist must confine himself to test responses alone, without the aid of minimal background information.

Plaintiff contends that Dr. Feuerburgh was angry during his examination and that his report reflected "prejudice" against the plaintiff. There is no support for this contention in the record. Indeed this may be another evidence of plaintiff's suspiciousness and misinterpretation of neutral events. I find that there was no prejudice operative either in the examination or report.

The psychologist followed the normal and proper practice, the standard of the community, in conducting and reporting on his psychological examination of the plaintiff without any negligence or malpractice. The time spent, the nature of the clinical examination conducted, the evaluation of the results of the examination and the length of the psychologist's report all indicate that this was not a cursory examination but professionally and competently conducted and reported on. Dr. Feuerburgh's diagnosis has not been shown to have been faulty and was not intended or considered by the reviewing psychiatrist to be a medical opinion.

Similarly, the scope of the clinical examination by Dr. Ramirez, the time that he spent and the care that he exhibited in recalling the plaintiff as soon as evidence confirmatory of his suspicions came to hand all indicate that his was a competent examination not cursorily conducted and indicating a professional de-

gree of attention to a problem not easily isolated and defined. Dr. Ramirez is highly qualified and carries a long experience in the field of neurology and psychiatry. Nothing in his procedures or his conclusions indicates negligence or malpractice.

The plaintiff makes a point of the fact that at the time of his examination, Dr. Ramirez was practicing medicine in alleged violation of § 6512 of the New York Education Law, McKinney's Consol. Laws, c. 16, which requires physicians to be licensed by the State to practice medicine. The plaintiff further contends that § 6512(1) (b) which exempts from such requirement graduates of foreign medical schools who are certified by the Education Council for Foreign Medical Graduates and who are commissioned officers in the uniformed services, and § 6512(1) (a) which similarly exempts municipal and state employees, do not exempt Dr. Ramirez, who was a civil service employee. And further, that even if these sections could be construed to apply to Dr. Ramirez, they require the supervision of a licensed physician. The post of Chief of Psychiatric Services at the Public Health Service Hospital was vacant in April of 1962.

This legalistic point is scant evidence of malpractice. Dr. Ramirez' functions were no different from those of other doctors at the Public Health Service Hospital who fell within the letter of the exemption. Further, in the absence of a Chief of Psychiatric Services, Dr. Ramirez acted under the supervision of the Acting Chief, Dr. Harvey Glasser.

I find that Dr. Ramirez exercised informed medical judgment and reached a reasonable opinion and conclusion which he reported to the Coast Guard, namely that plaintiff at the time was not psychiatrically fit for sea duty. This referred to and meant no more than that at the time, plaintiff was emotionally disturbed by a personality disorder—and not that he was psychotic or mentally diseased.

It is to be noted that Dr. Murphy, the plaintiff's private psychiatrist who testified at the trial, was unable to testify to any negligence on the part of either of the examining doctors. He criticized what he said was verbose style of the psychologist's report and expressed the opinion that he was biased; but he did not successfully question its care or competence as a psychological study. Indeed Dr. Murphy admitted that the psychologist was better qualified than he to administer and interpret the Rorschach test and that he, Dr. Murphy, had reached his conclusions as to the plaintiff's mental condition without the benefit of the background information concerning the plaintiff's relationship with his crew, save as the plaintiff related it to him.

In July, 1962, Dr. Smith, the head of the Psychiatric Service, independently examined the plaintiff, the record on his case and considered all of the circumstances and he concurred therefrom fully in the diagnosis of Dr. Ramirez and stated that in his opinion, Dr. Feuerburgh's report was in all respects proper.

With respect to the plaintiff's claim for damages based upon mental and emotional upset, if such claim were supported, he would be entitled to damages suffered by reason of proved negligence, without proof of a corresponding physical symptom. Freedom from mental disturbance is a protected interest in this State upon satisfactory evidence thereof. If there be some guarantee of the genuineness in the circumstances of the case a person injured by another's negligence may recover his damages. Physical injury is not necessary to sustain the claim. Ferrara v. Galluchio, 5 N.Y.2d 16, 21, 176 N.Y.S. 2d 996, 999, 152 N.E.2d 249, 252, 71 A.L.R.2d 331 (1958), "appears to be the first case in which a recovery has been allowed against the original wrongdoer [negligent overdose of x-ray treatments] for purely mental suffering arising from information the plaintiff received from a doctor to whom she went for treatment of the original injury". The question whether substantive liability exists in such circumstances is to be resolved by reference to New York law. Hess v. United States, 361 U.S. 314, 80 S.Ct. 341, 4 L.Ed.2d 305 (1960).

However, the plaintiff has failed to satisfy his burden of proof both with respect to the negligence and malpractice of the defendant's employees and as to his resultant emotional loss.

I conclude that the procedures followed and conclusions entered in the hospital records and the reports to the Coast Guard of the plaintiff's medical status were the product of proper medical and psychological examination and justifiable conclusions and were performed in the exercise of due care and judgment without any negligence, malpractice or fault. The medical status reports to the Coast Guard represented the reasonable exercise of informed judgment and were professionally proper and made without negligence or fault.

For the reasons stated the complaint should be dismissed on the merits.

The foregoing shall constitute the findings required by Rule 52(a), Fed.R. Civ.P.

So ordered.