Connie Francis GARZILLI and Joseph Garzilli, Plaintiffs,

v.

HOWARD JOHNSON'S MOTOR LODGES, INC., Defendant.

No. 75C 979.

United States District Court, E. D. New York.

Sept. 20, 1976.

Richard Frank, P.C., New York City, for plaintiffs.

Kirk, O'Connell & Cassara, Brooklyn, N.Y., Simpson Thacher & Bartlett, New York City, for defendant.

## MEMORANDUM AND ORDER

PLATT, District Judge.

Following the verdict of the jury in favor of the plaintiffs, Connie Francis Garzilli ("Connie Francis") and her husband, Joseph Garzilli, for $2.5 million and $150,000, respectively, the defendant moved pursuant to Rule 50(b) of the Federal Rules of Civil Procedure to have the verdict and any judg-ment entered thereon set aside or, in the alternative, pursuant to Rule 59, for a new trial on the grounds that the verdict was against the weight of the evidence and ex-cessive. Defense counsel requested, and were granted, time within which to submit briefs in support of their motion and coun-sel for both parties have done so. Defense counsel, however, have limited their brief to a discussion of the question of excessive-ness.

■ It is axiomatic that in considering these motions plaintiffs are entitled to have the evidence viewed in the light most favor-able to them and to have "the benefit of all inferences which the evidence fairly sup-ports". *Continental Ore Co. v. Union Car-bine & Carbon Corp.*, 370 U.S. 690, 696, 82 S.Ct. 1404, 1409, 8 L.Ed.2d 777 (1962); *Mi-chelman v. Clark-Schwebel Fiber Glass Corp.*, 534 F.2d 1036 (2d Cir. 1976); *Gilroy v. Erie Lackawanna R.R.*, 279 F.Supp. 139 (S.D.N.Y.1968).

■ It is also basic law, as stated in *Tennant v. Peroria & Pelkin Union Ry. Co.*, 321 U.S. 29, 35, 64 S.Ct. 409, 412, 88 L.Ed. 520 (1944), that:

"Courts are not free to reweigh the evi-dence and set aside the jury verdict mere-ly because the jury could have drawn different inferences or conclusions or be-cause judges feel that other results are more reasonable."

In the case at bar a great many of the facts were not in dispute and a great many more were uncontroverted.

The proof showed that Connie Francis was and is an internationally known singer, recording artist and professional entertain-er who, prior to her partial retirement in 1971, was earning substantial sums for her personal appearances as an entertainer, e. g., in 1968 $163,000, in 1969 $325,000, and 1970 $287,500. Her average fee for an eight performance engagement at a night club or theater during those years was ap-proximately $35,000. It was undisputed that in the course of her career, which commenced when she was ten years old, she had sold approximately 80 million records, had performed in innumerable theaters and

night clubs throughout the world and had made some five motion pictures.

Following her marriage to the plaintiff, Mr. Garzilli, in September of 1973 and the loss of her child in July of 1974 Connie Francis decided to resume her professional career. Her first engagement was at the Westbury Music Fair in Westbury, Long Island, for which she was to receive a guaranteed minimum of $20,000 plus a percentage ranging between 50 and 60% of the gross box office receipts for a series of eight performances beginning on November 6, 1974. The testimony was that her return to the entertainment field was very much a success and she was well received by capacity audiences for her first two evening performances.

In connection with this engagement, Connie Francis and her husband took rooms at the defendant's Motor Lodge in Westbury and in the early morning hours of November 8, 1974,[1] after her second performance, she was criminally assaulted by an unknown man who came through one of the sliding glass doors of her rooms. The doors gave the appearance of being locked, but the testimony showed they were capable of being unsecured from the outside without much difficulty.[2]

In addition to the pain and suffering which accompanied and immediately followed the assault and the fear, anxiety and depression which ensued thereafter, the proof showed that Connie Francis continued to suffer from a significant depressive reaction and a traumatic neurosis which was manifested by depression, social and sexual withdrawal and traumatic phobia. It was the opinion of one of her psychiatrists who testified that she would have significant difficulty in ever trying to resume her professional career for at least the next ten years. Connie Francis herself testified that she could no longer appear before an audience because of her feeling of shame and

humiliation, and she could no longer stay in a hotel or motel room which would be necessary for her to do if she were to fulfill her engagements.

Against this background the plaintiffs called Mr. Martin Kummer, Managing Director of Music Fair Enterprises, who testified that it was his function to book performers into the six theaters owned and operated by Music Fair Enterprises Inc. (including Westbury Music Fair) and that he also booked and packaged such persons for five other theaters. He testified that Connie Francis, then aged 35, was a "superstar" of extraordinary talent and that she would continue to be a leading performer for at least the next 25 years. He also said that he was confident that he could arrange for her appearances annually at the six music theaters and the five other theaters normally booked by him, and that Connie Francis would average approximately the same income as she would have received at Westbury or $40,000 or $45,000 for each engagement for each theater.

To corroborate and add to such testimony the plaintiffs also called Mr. Dominick Bruno, a proprietor of a dinner theater in Sylvan, New York, who testified with respect to offers which he had made to Connie Francis for engagements at his establishment in 1975 and 1976 which would have paid her fees of approximately $38,000 per year for appearances over the July 4th weekend of each year. He also testified that he would have continued to make such offers to her indefinitely in the future.

Defendant first argues that from the very size of the verdict the jury must not have been "functioning properly" which is really another way of saying that the evidence was insufficient to sustain the verdict, a point which we will hereinafter discuss.

■ In addition, the defendant claims that the size of the verdict demonstrates

---

1. Mr. Garzilli had left on a business trip on the morning of November 7, 1974.

2. Plaintiffs' proof with respect to defendant's negligence and proximate cause was ample and

there was little, if anything, on which to base an argument that either or both of them was contributorily negligent.

that the jury was carried away by "passion and prejudice" generated by "the public and press rendering the trial 'circus-like in its proportion to reality.'"

The Court of Appeals, however, at the behest of the mass news media, essentially ruled this issue out of the case when it overturned this Court's decision (which was made at the insistence of the attorneys for all of the parties) to close the trial to the public and the press.[3] In addition, even though there was an inordinate amount of publicity both before and after this Court's decision to close the court, there is nothing to show that any of the same reached, much less influenced, any member of the jury. The Court repeatedly instructed the jury during the trial not to read or listen to any media account of the trial and, at one point when there was a suggestion to the contrary, the Court questioned members of the jury to make sure that none of them had disobeyed the Court's instructions.

"Accordingly, this Court cannot charge the size of this verdict to any [passion or] prejudice that may have arisen against this defendant" by reason of the excessive publicity accorded to this case. *Hogue v. Permanent Mold Die Company*, 177 F.Supp. 229, 235 (E.D.Michigan, S.D.1959).

Defendant also argues in its brief that the evidence cannot be said to sustain the amount of the verdict for either Connie Francis or her husband. On pages 3 to 6 of its brief defendant summarizes facts most favorable to its position in the case and thereafter cites cases pertaining to "humiliation and mental anguish", "conscious pain and suffering", and "speculative loss of earnings".

■ The difficulty which this Court has with defendant's position is that at this

juncture the Court must view the facts in a light most favorable to the plaintiffs and give them the benefit of all inferences which the evidence fairly supports. Secondly, as indicated in the Court's brief summary of the facts set forth above, it cannot reasonably be said that the proof with respect to Connie Francis' alleged loss of earnings "were, at best, speculative." The proof with respect to Connie Francis' past and prospective earnings was quite extensive and the psychiatric testimony and Connie Francis' testimony to the effect that in all probability she will not be able to perform for at least ten years was uncontradicted.[4]

Plaintiffs' counsel made, and set forth in his brief, various calculations based on the testimony in the case showing that the jury could have projected a ten year loss in earnings for the plaintiff of an amount between $5,830,000 and $11,950,000. Even if the jury had taken an average of her earnings in the last three years in which she worked prior to her partial retirement (i. e., 1968 through 1970), Connie Francis' projected loss of earnings for the ensuing ten years would have been $2,585,000 and this would have made no allowance for the substantial cost-of-living increases which occurred between 1969 and 1974.[5] In addition, of course, none of such calculations makes any allowance whatsoever for the criminal assault, the horrendous results which ensued therefrom and the pain, suffering, mental anguish and humiliation[6] which followed.

■ To an outsider, unfamiliar with all the facts in the case, the verdict undoubtedly seems quite extraordinary. There is no question but that it is substantial. Nonetheless, in the Court's opinion, given all of

---

**3.** A decision which counsel for the defendant in their brief now characterize as "prescient" and "proper" and for which this Court was, of course, at the time roundly castigated and criticized by the newspapers in numerous editorials and articles.

**4.** Defendant offered no medical or psychiatric proof to rebut the testimony of Connie Francis or her psychiatrist.

**5.** The facts with respect to which are well known to all Federal judges whose salaries were frozen during all of such period.

**6.** A glance at one or more of the articles in the "movie mags" which were introduced into evidence substantiate only part of this portion of her claim but they are illustrative of the extent of her claim for damages.

the facts herein and particularly the professional standing of the plaintiff, it cannot be said to be so excessive as to warrant the intervention by a court. As was stated by Judge Timbers in *La France v. New York, New Haven and Hartford Railroad Company,* 191 F.Supp. 164, 169 (D.C.Conn.1961), aff'd 292 F.2d 649 (2d Cir.):

"In the last analysis, however, the question of whether a verdict is excessive must be determined on the basis of the evidence in the particular case."

In this particular case the Court feels that it would be a usurpation of the jury's function for it to attempt to change or in any way interfere with the amount awarded by the jury as damages to Connie Francis.

The facts with respect to Mr. Garzilli's case are somewhat different and require a brief analysis.

■ Mr. Garzilli testified that in addition to the destruction of his previously normal and satisfactory sexual relationship with Connie Francis, he was for a time deprived of her society and companionship and some of her services and still is deprived of her companionship, society and services as his wife on business occasions. In his business as a wholesale tour operator Mr. Garzilli claimed that his wife was an invaluable asset to him. No specifics, however, were given by Mr. Garzilli to substantiate such claimed business loss nor was any dollar estimate given.

Judgments of $6,000 to $30,000 for a loss of a spouse's conjugal services are not uncommon; e. g., *Christman v. Bailey,* 38 A.D.2d 773, 327 N.Y.S.2d 966 (3d Dept., 1972); *Morrison v. Ted Wilkerson, Inc.,* 343 F.Supp. 1319 (W.D.Mo.1971); *Uris v. Gurney's Inn Corp.,* 405 F.Supp. 744 (E.D.N.Y. 1975); *Manning v. Altec, Inc.,* 488 F.2d 127 (6th Cir. 1973).

However, a verdict such as this for many times such amounts is somewhat extraordinary. (See e. g., *Rocha v. State,* 77 Misc.2d 290, 352 N.Y.S.2d 990 (Ct. of Cl. 1974), aff'd 45 A.D.2d 633, 360 N.Y.S.2d 484 (3d Dept., 1974).

It is difficult for the Court to understand how Connie Francis was going to resume her professional career on a full-time basis and at the same time continue to be the same asset to Mr. Garzilli in connection with his business activities which she had theretofore been. The Court suspects, in view of the size of the verdict for Mr. Garzilli, that the jury may well have overlooked this aspect of the problem and have awarded him damages for the loss of her assistance in his business thereby in effect doubling a recovery for her incapacity.

In any event, given the facts the Court feels that this portion of the verdict is excessive and a retrial of Mr. Garzilli's damages must be had unless he accepts a remittitur of $125,000 or a total recovery on his claim of $25,000.

On all of the evidence and for the foregoing reasons defendant's motion for judgment notwithstanding the verdict is denied; defendant's motion for a new trial with respect to the plaintiff Connie Francis is denied and defendant's motion for a new trial with respect to Mr. Garzilli is granted unless he accepts a remittitur of $125,000.

SO ORDERED.