**John LEAHY and Benjamin Mollica, Plaintiffs,**

v.

**FEDERAL EXPRESS CORPORATION, Defendant.**

**No. CV–83–4031 (JBW).**

United States District Court, E.D. New York.

July 12, 1985.

Noah A. Kinigstein, New York City, for plaintiffs.

Chadbourne, Parke, Whiteside & Wolff, New York City (Charles K. O'Neill and Melissa A. Young, New York City, of counsel), for defendant.

*Opinion and Order*

MALETZ, Senior Judge.[1]

Defendant Federal Express Corporation moves for judgment notwithstanding the verdict, Fed.R.Civ.P. 50(b), or alternatively for a new trial, *id.* 59(a), following a jury verdict for plaintiffs John Leahy and Benjamin Mollica on claims of negligent infliction of emotional distress. For the reasons that follow, the motion for judgment n.o.v. is granted.

### I. *Background*

Plaintiffs instituted this action after Federal Express, an overnight delivery company, terminated their employment as couriers. Their complaint asserted eight claims, of which four ultimately went to the jury: (1) false imprisonment, (2) assault, (3) intentional infliction of emotional distress, and (4) negligent infliction of emotional distress.[2]

With respect to the claims that went to the jury, plaintiffs testified that they were

---

1. Of the United States Court of International Trade, sitting by designation.

2. The other claims were disposed of as follows: Before trial, the court dismissed a claim alleging a violation of New York Labor Law § 734(1). At trial, plaintiffs withdrew their claim of tortious and abusive discharge and a claim of libel by Mollica. Finally, the court directed a verdict for defendant on plaintiffs' claim that Federal Express breached an alleged employment contract. *See Leahy v. Federal Express Corp.,* 609 F.Supp. 668 (E.D.N.Y.1985).

mistreated by employees of Federal Express during a security investigation that followed the disappearance of an expensive wristwatch that had been entrusted to defendant for delivery. In a previous opinion, the court summarized plaintiffs' contentions:

Leahy testified that a Federal employee named John Flynn prevented him from leaving a room and placed him in apprehension of immediate harm by pulling back his jacket to reveal a firearm he was carrying. Mollica testified that he was similarly confined to a room and placed in apprehension of immediate harm when a Federal employee named John Ridell [*sic*][3] placed his arm upon the wall and pushed Mollica backwards in response to Mollica's attempt to exit.

*Leahy v. Federal Express Corp.*, 609 F.Supp. 668, 672 (E.D.N.Y.1985).

The jury found for Federal Express on the claims of false imprisonment and intentional infliction of emotional distress. It further found that plaintiffs had been assaulted but had not been damaged thereby. Finally, it found Federal Express liable for negligent infliction of emotional distress and awarded damages of $20,000 to Leahy and $30,000 to Mollica. These awards are attacked in defendant's motion for judgment n.o.v.

## II. *Discussion*

### A. *Judgment N.O.V.*

On Federal Express's motion for judgment n.o.v., the court must consider the evidence in the light most favorable to the opponents of the motion, Leahy and Mollica. Thus, plaintiffs are entitled to all reasonable inferences that may be drawn in their favor. *See, e.g., Sirota v. Solitron Devices, Inc.*, 673 F.2d 566, 573 (2d Cir.), *cert. denied*, 459 U.S. 838, 459 U.S. 908, 103 S.Ct. 86, 103 S.Ct. 213, 74 L.Ed.2d 80, 74 L.Ed.2d 170 (1982); *Mattivi v. South African Marine Corp., "Huguenot"*, 618 F.2d 163, 167–68 (2d Cir.1980); *DC Comics, Inc. v. Filmation Associates*, 486 F.Supp. 1273, 1278 (S.D.N.Y.1980); *Garzilli v.*

*Howard Johnson's Motor Lodges, Inc.*, 419 F.Supp. 1210, 1211 (E.D.N.Y.1976).

### B. *Emotional Distress Claims*

#### 1. *New York Law*

Inasmuch as jurisdiction is predicated on diversity of citizenship, plaintiffs' claims of negligent infliction of emotional distress are controlled by New York conflicts and tort law. *See, e.g., National Resources Trading, Inc. v. Trans Freight Lines*, 766 F.2d 65 (2d Cir.1985) (citing *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), and *Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941)). The New York courts, while accepting claims of emotional distress, scrutinize such claims carefully, seeking guarantees of genuineness. Thus, the Court of Appeals followed Professor Prosser and wrote, with regard to *intentional* infliction of emotional distress:

Freedom from mental disturbance is now a protected interest in this State. "[T]he only valid objection against recovery for mental injury is the danger of vexatious suits and fictitious claims, which has loomed very large in the opinions as an obstacle. The danger is a real one, and must be met. Mental disturbance is easily simulated, and courts which are plagued with fraudulent personal injury claims may well be unwilling to open the door to an even more dubious field. But the difficulty is not insuperable. Not only fright and shock, but other kinds of mental injury are marked by definite physical symptoms, which are capable of clear medical proof. It is entirely possible to allow recovery only upon satisfactory evidence and deny it when there is nothing to corroborate the claim, or to look for some guarantee of genuineness in the circumstances of the case. The problem is one of adequate proof, and it is not necessary to deny a remedy in all cases because some claims may be false. The very clear tendency

---

3. The parties later informed the court that the employee's name is spelled Riddell.

of the recent cases is to refuse to admit incompetence to deal with such a problem, and to find some basis for redress in a proper case." Prosser on Torts, § 34, pp. 212–213.

*Ferrara v. Galluchio,* 5 N.Y.2d 16, 21, 152 N.E.2d 249, 252, 176 N.Y.S.2d 996, 999–1000 (1958).

Three years later, the Court of Appeals held that recovery was also available for *negligently* inflicted emotional distress, with the proviso that courts "must look to the quality and genuineness of proof, and rely to an extent on the contemporary sophistication of the medical profession and the ability of the court and jury to weed out the dishonest claims." *Battalla v. State,* 10 N.Y.2d 237, 242, 176 N.E.2d 729, 731–32, 219 N.Y.S.2d 34, 38 (1961) (footnote omitted).

*Battalla,* which emphasized the common-law axiom that "one may seek redress for every substantial wrong," *id.* at 240, 176 N.E.2d at 730, 219 N.Y.S.2d at 36, did not undo the rigorous standard of genuineness contemplated by *Ferrera.* "Despite the broad language employed in *Battalla* . . . it is clear that the threshold requirement of a 'guarantee of genuineness', first articulated in *Ferrara* . . . has not been abandoned." *Fusco v. General Motors Corp.,* 126 Misc.2d 998, 1001–02, 485 N.Y.S.2d 431, 434 (Westchester Co.Ct.1984).

Thus, in the leading case of *Johnson v. State,* 37 N.Y.2d 378, 334 N.E.2d 590, 372 N.Y.S.2d 638 (1975), the Court of Appeals found a guarantee of genuineness in psychiatric testimony that claimant suffered anxiety neurosis, with objective manifestations, after employees of a state hospital erroneously told her that her mother had died. *Id.* at 381, 334 N.E.2d at 593, 372 N.Y.S.2d at 640–41. Similarly, in *Ferrara,* plaintiff introduced psychiatric testimony of the phobia she had developed. 5 N.Y.2d at 19, 152 N.E.2d at 251, 176 N.Y.S.2d at 998.

### 2. *The Present Action*

Although medical testimony is an entirely acceptable method for proving genuineness, other corroboration can satisfy the standard in an appropriate case. In this action, plaintiffs' testimony that they were distressed by the conduct of defendant's employees, while hardly detailed or graphic, was entirely uncorroborated.

Leahy testified that he was frustrated by questioning at the hands of Federal Express security personnel on January 3, 1983. He added that one of the security men, John Flynn, revealed a firearm, causing Leahy to feel like a common criminal and to wonder whether he would be pistol whipped. He further stated that he was "very upset" after the incident and that, accordingly, the company permitted him to take the rest of the day off. Referring to his emotional condition, Leahy testified that he was a "nervous wreck," "intimidated," and "scared." Leahy described his state of mind during further investigation on January 4, 1983 by testifying that he could not believe what was happening to him and that the incident was "like a nightmare."

Mollica, testifying to the substance of his meeting with John Riddell, testified that he was "a little scared" and that he thought Riddell was going to start hitting him. Mollica also testified that he was prepared to attack Riddell. Initially, Mollica testified that Riddell barred him from calling his pregnant wife, but on cross-examination he testified that he indeed called her.

Thus, taking the testimony in the light most favorable to plaintiffs and drawing all reasonable inferences in their favor, Leahy and Mollica testified at most that they were upset, nervous, intimidated, and scared. There was absolutely no corroboration of this testimony[4] from family members, friends, or acquaintances—let alone psychiatrists, psychologists, or physicians.

In the absence of any corroboration whatever, the indicia of genuineness upon

---

**4.** The testimony is particularly conclusory since it refers to subjective states of mind rather than objective manifestations thereof. *Cf., e.g., Johnson v. State, supra.*

which New York courts have insisted as a guarantee against spurious claims are utterly lacking. Nor can the court accept plaintiffs' contention that the jury tested their credibility and found the requisite genuineness. For this record—as a matter of law—cannot sustain plaintiffs' claims of emotional distress. Therefore, Federal Express's motion for judgment n.o.v. is granted.

SO ORDERED.