[806 NYS2d 566]

Helen Ornstein, Respondent, v New York City Health and Hospitals Corporation et al., Appellants.

First Department, January 3, 2006

**APPEARANCES OF COUNSEL**

*Michael A. Cardozo, Corporation Counsel*, New York City (*Julie Steiner* and *Barry P. Schwartz* of counsel), for appellants.

*Kramer & Dunleavy, LLP*, New York City (*Lenore Kramer* of counsel), and *Law Office of Elisa Barnes*, New York City (*Elisa Barnes* of counsel), for respondent.

## OPINION OF THE COURT

MARLOW, J.

The central question raised on this appeal is whether plaintiff has a viable claim for an award of damages solely for emotional and psychological injury as the result of exposure to the virus which causes acquired immune deficiency syndrome (AIDS) subsequent to the time at which unchallenged scientific and statistical evidence shows the underlying fear of infection unreasonable.

On September 1, 2000, plaintiff, a part-time nurse in the emergency ward of Bellevue Hospital, was assigned to care for a critically ill patient diagnosed with AIDS. While rolling the patient over with the help of an aide in order to clean him, plaintiff discovered a needle stuck in the mattress. After disposing of the needle, plaintiff and the aide continued cleaning the patient. As they rolled the patient over to the other side, another needle punctured plaintiff's double layer of gloves and her thumb.

Plaintiff was treated immediately with antiviral medication for exposure to the human immunodeficiency virus (HIV), the agent that causes AIDS. The dosage was increased after plaintiff's doctors received a report on the severity of the patient's condition. Plaintiff remained on medication for a "couple of months," with side effects continuing for about two months thereafter.

Plaintiff underwent tests to detect the presence of HIV antibodies every three months for a year, testing negative each time. Her treating physician told her that the likelihood of contracting the AIDS virus was highest between the third and

sixth month after exposure. Plaintiff claimed she was not aware that the odds of contracting the virus decreased after six months, and, in any event, regardless of the medical view that it was unlikely she would contract AIDS after six months of negative testing, she intended to be tested for a year. Although plaintiff tested negative in September 2001, one year after the incident, it was not until June 2002 that she no longer feared contracting the disease.

Soon after the incident, plaintiff alleged that she began having panic attacks. She began weekly therapy and saw a psychiatrist who prescribed drugs, including Valium and Prozac. Plaintiff was diagnosed by a workers' compensation psychiatrist as suffering from post-traumatic stress disorder and a sleep disorder as a result of the incident. Plaintiff claimed she has not been able to work in an emergency or operating room since the incident because of her stress disorder.

Plaintiff commenced this action in May 2001 against the Health and Hospitals Corporation and the doctor she claimed left the needles in the bed. Plaintiff sought damages for emotional injuries, including the fear of contracting AIDS (commonly referred to as AIDS phobia), post-traumatic stress disorder, and recurrent major depressive disorder.

Citing prevailing legal authority which is based on the medical consensus that it is highly unlikely that a person who tests HIV negative more than six months after a potential exposure will become infected, defendants moved, pursuant to CPLR 3211 (a) (7), to dismiss any claim for emotional damages sustained more than six months after plaintiff's thumb was pierced with the needle. Plaintiff argued that her claims for post-traumatic stress disorder and depressive disorder were permanent and separate and apart from any AIDS phobia claim, and, therefore, compensable beyond six months.

Agreeing with plaintiff that she was not seeking continued damages for her AIDS phobia claim, but, rather, was seeking damages for her separate claim for continued emotional and psychological injuries beyond six months, the Supreme Court found the prevailing authority relating to the six-month recovery bar in AIDS phobia cases inapplicable. Instead, the court relied on *Fosby v Albany Mem. Hosp.* (252 AD2d 606 [1998]), in which the Third Department allowed a plaintiff to pursue a claim for negligent infliction of emotional distress, despite no actual proof of exposure to HIV, where there were special circumstances which demonstrated that the claim was not spurious.

It is beyond cavil that a cause of action for negligent infliction of emotional distress does not always require a physical injury as a necessary element (*see e.g. Martinez v Long Is. Jewish Hillside Med. Ctr.,* 70 NY2d 697 [1987]; *Sheila C. v Povich,* 11 AD3d 120 [2004]). However, recovery for purely emotional damages is extremely limited (*see Kennedy v McKesson Co.,* 58 NY2d 500 [1983]; *Creed v United Hosp.,* 190 AD2d 489, 491 [1993]). Therefore, such a claim "generally must be premised upon the breach of a duty owed to plaintiff which either unreasonably endangers the plaintiff's physical safety, or causes the plaintiff to fear for his or her own safety" (*Sheila C., supra,* 11 AD3d at 130; *see also Bovsun v Sanperi,* 61 NY2d 219 [1984]).

The relatively new theory of tort liability for negligent infliction of emotional distress based on a plaintiff's exposure to HIV and concomitant fear of contracting AIDS presents a unique problem given the initial and continuing public misconceptions about AIDS and how it is transmitted; the lack of an accompanying physical injury; the genuine concern that these claims could be feigned easily; and the general limitation of recovery for strictly emotional damages. New York, to date, has recognized a claim for emotional distress based on AIDS phobia subject to certain limitations. Notably, plaintiff does not challenge the existing law in New York limiting recovery for AIDS phobia claims to six months. The question we decide today is whether the unchallenged six-month limitation on recovery based on an AIDS phobia claim equally applies to plaintiff's alleged separate and distinct claim for post-traumatic stress disorder and emotional damages, which she asserts are unrelated to any phobia claim, or, whether, as our dissenting colleague contends, such a limitation employs a legal standard not supported by either statute or common law. We find that the limitation applies to plaintiff's claim, and, therefore, reverse the order of the Supreme Court.

New York has adopted the widely accepted objective standard for determining whether a plaintiff, who has not tested HIV positive, has in fact actually been exposed to HIV (*see Brown v New York City Health & Hosps. Corp.,* 225 AD2d 36, 46 [1996] [and cases cited therein]). Thus, in order to advance a claim for the negligent infliction of emotional distress caused by AIDS phobia, a plaintiff must present, as a threshold requirement, proof of "actual[ ] expos[ure]" (*see Kelly v Our Lady of Mercy Med. Ctr.,* 279 AD2d 290, 290 [2001], *lv denied* 96 NY2d 719 [2001]; *Bishop v Mount Sinai Med. Ctr.,* 247 AD2d 329, 331

[1998]; *Brown,* 225 AD2d at 45). Actual exposure requires proof of a scientifically accepted channel of transmission and the presence of HIV during transmission (*see Bishop, supra; Brown, supra*). Defendants agree plaintiff has satisfied this threshold requirement. However, they maintain plaintiff cannot recover any claim for damages, including those that are not phobia related, for any period beyond six months from the date of the incident. Defendants argue that plaintiff's claimed injuries all stem from her initial fear of becoming infected, and, therefore, any claim for damages beyond six months is unreasonable. On the other hand, plaintiff contends that any recovery for her claimed emotional and psychological injury in the form of post-traumatic stress disorder—which she characterizes as a traditional negligent infliction of emotional distress claim—is not subject to a reasonableness standard.

In *Brown,* Justice O'Brien, in a thorough and well-reasoned opinion, considered the widespread public misconceptions surrounding AIDS despite the weight of the medical authority which suggested that an individual exposed to the AIDS virus can be reasonably assured that he or she is free of infection if tests conducted for six months after exposure are negative (225 AD2d at 42-44). The rationale for imposing a corresponding limitation on AIDS phobia claims is the medical consensus that 95% of HIV carriers will test positive for the virus within six months of acquiring it (*see Brown,* 225 AD2d at 43; *Faya v Almaraz,* 329 Md 435, 446, 620 A2d 327, 332 [1993] [relying on Morbidity and Mortality Weekly Report, July 21, 1989, Vol. 38, No. S-7, and C. Robert Horsburgh et al., *Duration of Human Immunodeficiency Virus Infection before Detection of Antibody,* The Lancet, Sept. 16, 1989, at 637-640]).

Justice O'Brien further aptly observed:

> "Because an 'AIDS phobia' cause of action is based on a potential future injury, the requirement of proof of actual exposure is necessary in order to insure that such a cause of action remains within the bounds of what is considered reasonably possible. The fear of contracting AIDS depends not only upon the likelihood that the virus was transmitted during a specific incident but also upon the likelihood that infection will develop. As one court noted, the statistical probability of contracting HIV from a single needle stick, assuming the needle was contaminated, is approximately 0.3 to 0.5% . . ." (225 AD2d at 47).

Thus, the *Brown* court held that "[a] plaintiff's initial, reasonable fear of contracting AIDS . . . becomes unreasonable if more than six months have passed since exposure, and the plaintiff continues to test negative for HIV antibodies" (*id.*).

Following *Brown*, the Second Department has consistently dismissed *all* emotional distress claims beyond six months of the date of the alleged exposure where the plaintiff has tested negative for the HIV virus (*see Taormino v State of New York*, 286 AD2d 490 [2001]; *Lombardo v New York Univ. Med. Ctr.*, 232 AD2d 459 [1996]; *cf. Damanti v Jamaica Community Adolescent Program*, 12 AD3d 341, 342 [2004] [claim beyond six months not dismissed where testing showed a "false" positive]).

This Court has not decided whether any claim for emotional distress beyond the initial six months immediately following exposure is unreasonable as a matter of law where the plaintiff has tested negative for the HIV virus throughout that six-month period. Defendants' position that plaintiff's recovery for emotional damages beyond any AIDS phobia claim should be similarly limited to six months finds support in existing case law (*see Brown, supra* [Second Department implicitly rejected plaintiff's contention that she was entitled to future damages for post-traumatic stress disorder]; *see also Williamson v Waldman*, 150 NJ 232, 250, 696 A2d 14, 23 [1997] [emotional distress damages must be based on fears experienced by a reasonable and well-informed person, thus, emotional distress should be limited to the "window of anxiety" or that period after which such reasonable and well-informed person no longer would experience continuing emotional distress]; *Faya v Almaraz*, 329 Md at 446, 455, 456, 620 A2d at 332, 337 [damages recoverable for fear and its "physical manifestations" (which are objectively measurable) suffered during "window of anxiety" and any lingering injuries would no longer be related to a reasonable fear]; *Carroll v Sisters of St. Francis Health Servs., Inc.*, 868 SW2d 585 [Tenn 1993] [liability will attach only to the extent that the resulting emotional distress was within the range of that experienced by an ordinary, reasonable person under the circumstances]).

These cases are sufficiently analogous to support the conclusion reached in *Brown* and the one we reach today. Accepting the allegations set forth in the complaint as true, we find that plaintiff has not set forth a legally cognizable claim for emotional distress, including post-traumatic stress disorder, allegedly sustained beyond six months from the date of initial

exposure to the AIDS virus. Indeed, plaintiff's claim for post-traumatic stress disorder is simply an end run around the six-month AIDS phobia restriction on emotional damages, which she does not challenge. Both claims for damages stem directly from the same single needle-stick injury; and, as defendants contend, the fear of AIDS and post-traumatic stress disorder are so intertwined that the two emotional damage claims cannot be distinguished. Accordingly, if it is reasonable to limit damages for an AIDS phobia claim to six months, a limitation which plaintiff does not challenge, a fortiori, it is reasonable to similarly restrict emotional damages stemming from the same initial incident. Moreover, this rationale is supported by medical statistics. The statistical probability that plaintiff would contract AIDS from a single needle stick, assuming the needle was contaminated, is approximately between .3% to .5%, in other words, between 3 and 5 in 1,000 (Comment, *AfrAIDS: Fear of AIDS as a Cause of Action*, 67 Temp L Rev 769, 799 [1994]), and 95% of those HIV carriers will test positive within the first six months of having been infected. Thus, not only is the known initial risk minute, but it is highly unlikely after six months of negative testing that plaintiff had ever become infected with the AIDS virus (*see Brown*, 225 AD2d at 43-44 [and authority relied on therein]).

Plaintiff's reliance on *Fosby v Albany Mem. Hosp.* (252 AD2d 606 [1998]) is entirely misplaced. In *Fosby*, the Court allowed the plaintiff, despite the fact that she could not establish actual exposure, to pursue her AIDS phobia claim nevertheless. The special circumstances cited by the *Fosby* court relate to the defendant hospital's refusal, for no apparent reason, to test the needle for 18 months, and that therefore the plaintiff, through no fault of her own, could not demonstrate actual exposure. The motion court here also relied on *Fosby* for its erroneous conclusion that this plaintiff had demonstrated special circumstances allowing recovery beyond the six-month period. However, special circumstances, as the *Fosby* court defined them, do not provide an avenue for a plaintiff to pursue additional damages beyond the six-month limit. Rather, it is a mechanism by which a plaintiff, with an apparently genuine claim, can pursue it where special circumstances prevent him or her from demonstrating actual exposure.

The rationale in *Fosby* has no application here. Indeed, *Fosby* did not even address the specific issue in this case, i.e., whether an emotional damage claim may be permitted beyond six months from actual exposure.

Plaintiff's reliance on *Marchica v Long Is. R.R. Co.* (31 F3d 1197 [1994], *cert denied* 513 US 1079 [1995]) is also misplaced. In *Marchica*, the plaintiff brought a claim for AIDS phobia under the Federal Employers' Liability Act (45 USC §§ 51-60 [FELA]). Noting that it was not bound by the common law, the Second Circuit adopted a more flexible view, consistent with FELA's remedial purpose and, accordingly, held that the plaintiff was not required to prove actual exposure in order to state a viable cause of action. Rather, it was sufficient if the plaintiff demonstrated a possible channel of transmission. The federal court also held that the plaintiff could recover for all past and future emotional injuries, including post-traumatic stress disorder. *Marchica* is inapplicable for several reasons. First, it involves a federal statute which evinces a legislative intent to provide a broader remedy than that available at common law. Next, *Marchica* predates *Brown*. Finally, this Court has specifically rejected the lesser standard set forth in *Marchica* (*see Bishop,* 247 AD2d at 332).

While we can be sympathetic to a person in plaintiff's position, we believe it appropriate to accept the prevailing legal view that compensation for emotional distress based on negligent and actual exposure to the AIDS virus must be based on a reasonable or normal response. In our view, "normal" or "reasonable" can only be measured against the actual medically demonstrated risk of contracting the disease. Given that the initial probability that plaintiff would contract AIDS was only between 3 and 5 in 1,000, and that, if in fact she were infected with HIV there was a 95% chance she would have tested positive within six months of exposure, we find that any emotional distress beyond six months is, as a matter of law, unreasonable.

To depart from this reasonable and objective standard, which insures fairness and consistency in a process intended to compensate plaintiffs for emotional distress, and to employ instead a vague and subjective one for those who claim their emotional state does not correspond to scientifically proven realities, sanctions a right of action highly vulnerable to abuse. Furthermore, it undermines the legal system's legitimate goal in addressing this sui generis issue since litigation in the area first began, namely, to present a realistic, medically sensitive and sound, temperate response to an actual—as opposed to an uninformed perceived—threat. In light of the widespread, medically unfounded, and occasionally hysterical public misconceptions surrounding this disease and how it is transmitted, the subjective standard, urged by plaintiff, should be rejected.

Accordingly, the order of the Supreme Court, New York County (Sheila Abdus-Salaam, J.), entered January 9, 2004, which denied defendants' motion to dismiss any claim for damages allegedly sustained by plaintiff more than six months after the incident sued upon, should be reversed, on the law, without costs, the motion granted and the matter remanded for further proceedings.

CATTERSON, J. (dissenting). The majority holding rests entirely on the legal reasoning of the Second Department decision in *Brown v New York City Health & Hosps. Corp.* (225 AD2d 36 [1996]) and its progeny. Because I believe that *Brown* represents a departure from common-law principles of tort liability that is more properly left to the State Legislature, I respectfully dissent.

The law in New York on the topic of emotional or psychological injury has been subject to various insults through the years, most of which have been visited upon it not through the evolution of the common law but rather from the courts' use of imprecise language and various colloquialisms. Clarification rather than repetition or obfuscation is necessary to avoid depriving plaintiffs of rights recognized for decades. Most recently, we held that

> "[a]ll there need be to recover for emotional injury . . . is breach of a duty owing from defendant to plaintiff that results directly in emotional harm, and 'evidence sufficient to guarantee the genuineness of the claim', i.e., an 'index of reliability,' such as, for example, contemporaneous or consequential physical injury." (*Garcia v Lawrence Hosp.*, 5 AD3d 227, 228 [1st Dept 2004] [citations omitted].)

This holding is implicitly limited to those cases where a breach of some duty to the plaintiff results directly in emotional harm suffered by the plaintiff with either no physical injury or slight injury.

It is important to recognize that there are three different broad categories of emotional injury cases. Failure to clearly differentiate which of the three categories the plaintiff's cause of action resides in is the source of some confusion by both the bench and the bar.

In *Ferrara v Galluchio* (5 NY2d 16, 21 [1958]) the Court first announced in unequivocal terms that emotional injuries are compensable:

"Freedom from mental disturbance is now a protected interest in this State. '[T]he only valid objection against recovery for mental injury is the danger of vexatious suits and fictitious claims, which has loomed very large in the opinions as an obstacle. The danger is a real one, and must be met. Mental disturbance is easily simulated, and courts which are plagued with fraudulent personal injury claims may well be unwilling to open the door to an even more dubious field. But the difficulty is not insuperable. Not only fright and shock, but other kinds of mental injury are marked by definite physical symptoms, which are capable of clear medical proof. It is entirely possible to allow recovery only upon satisfactory evidence and deny it when there is nothing to corroborate the claim, or to look for some guarantee of genuineness in the circumstances of the case. The problem is one of adequate proof, and it is not necessary to deny a remedy in all cases because some claims may be false. The very clear tendency of the recent cases is to refuse to admit incompetence to deal with such a problem, and to find some basis for redress in a proper case.' (Prosser on Torts, § 34, pp. 212-213.)"

In *Ferrara*, the Court allowed a claim for "exceptional mental suffering over the possibility of developing cancer." (5 NY2d at 22.) The rationale of this line of breach of duty cases has been extended to claims of emotional injury where there was no physical injury to the plaintiff whatsoever. (*See Battalla v State of New York*, 10 NY2d 237 [1961]; *Johnson v State of New York*, 37 NY2d 378 [1975]; *Lando v State of New York*, 39 NY2d 803 [1976].)

The breach of duty line of cases must be distinguished from the second category where the claimed emotional injury results solely from harm inflicted on another and where no duty is owed by the defendant to the party claiming emotional injury. In *Tobin v Grossman* (24 NY2d 609 [1969]), the Court refused to permit a claim for a mother's emotional injury suffered upon learning that her child was injured in an automobile accident that the mother did not witness. The Court declined to extend recovery in tort to third persons where both the physical injury or impact and fear of such injury were visited solely upon another.

The third category of cases involves a breach of a duty owed to the plaintiff which results in emotional injury arising out of

physical injury to a third person. In *Howard v Lecher* (42 NY2d 109 [1977]), the Court refused to allow a claim for emotional injury brought by parents of a child who died of a disease due to the obstetrician's failure to test for and diagnose the probability of the child contracting that disease. Although the Court recognized that the doctor owed some duty to the parents, the Court nonetheless held that there could be no recovery for the parents' emotional distress because the injury was consequential and not direct. (42 NY2d at 112.)

In *Howard*, the Court reiterated the precedent on recovery for emotional distress and held that when a party's negligence is directly responsible for a physical injury, the plaintiff may recover for the attendant emotional injury as well as the physical injury; the plaintiff may also recover when there is no physical impact but the party is subjected to fear of physical injury because of defendant's tortious conduct. Further, the Court reiterated that recovery may be had for emotional harm *even in the absence of physical harm or fear of physical injury* so long as the emotional harm is *"genuine, substantial, and proximately caused by the defendant's conduct."* (42 NY2d at 111-112 [emphasis added].)

Clearly, the standard of proof by which emotional distress will be determined as "genuine" or "substantial" lies at a different point on the spectrum from the bright-line "objective" and "reasonable" standard used by the *Brown* court and favored here by the majority. In *Ferrara*, the Court held that a "guarantee of genuineness" was to be found in the "circumstances of the case." (*Ferrara v Galluchio, supra* at 21.) In *Johnson*, the Court found "especial likelihood of genuine and serious mental distress, arising from the special circumstances, which serves as a guarantee that the claim is not spurious." (*Johnson v State of New York*, 37 NY2d at 382.)

Genuineness, then, is a question of fact, not a matter of law. (Robert J. Rhee, *A Principled Solution for Negligent Infliction of Emotional Distress Claims*, 36 Ariz St LJ 805, 832 [2004] [compensable mental injury should be proved by appropriate evidentiary methods including expert testimony, physical symptoms, hospitalization, therapy and fact witnesses], citing *Molien v Kaiser Found. Hosps.*, 27 Cal 3d 916, 929-930, 616 P2d 813, 821 [1980] and *Bowen v Lumbermens Mut. Cas. Co.*, 183 Wis 2d 627, 663-665, 517 NW2d 432, 446-447 [1994, Wilcox, J., concurring].)

By contrast, the objective and reasonable standard embraced today by the majority rejects this essential subjective component.

It operates, instead, by attaching a label to the mental injury (in this case, the label, "fear of AIDS," or "AIDS phobia"), and then uses empirical evidence about the underlying physical component to impose an artificial uniformity of mental insult in order to foreclose mental injury claims and thereby limit recovery. It now allows a court to determine as a matter of law, the precise moment in time when a plaintiff's emotional distress is no longer compensable, and therefore, when it must cease. Moreover, contrary to the majority's observation, there is no existing law in New York that limits recovery for AIDS phobia claims to six months.

To arrive at this point, the majority simply followed the Second Department in *Brown*, a case where the plaintiff commenced an action for negligent infliction of emotional distress after she was punctured by a negligently discarded needle that had been used on an HIV-positive baby. The *Brown* court acknowledged that exposure to the disease is a "cause for anxiety" but held that in order to sustain an action to recover for emotional distress, the plaintiff had to show, inter alia, a "likelihood that infection will develop." (*Brown v New York City Health & Hosps. Corp.*, 225 AD2d at 42, 47.) The Court then looked to a purported medical consensus[1] that: "95% of HIV carriers will test positive (seropositive) for the virus within six months of exposure, and it is unlikely that an individual who tests HIV negative more than six months after a potential exposure will become infected with the virus as a result of that exposure." (225 AD2d at 43.) The *Brown* court thus concluded that "[a] plaintiff's initial, reasonable fear of contracting AIDS thus becomes unreasonable if more than six months have passed . . . and the plaintiff continues to test negative." (225 AD2d at 47.) Consequently, recovery of damages was limited to that suffered during this six-month "window of anxiety" period.

The illogic of the *Brown* decision is as startling as its disregard of the common law. First, if the HIV tests are accurate for 95% of those tested, the corollary is that they are inaccurate for 5 out of every 100 individuals tested. In other words, 5% of those testing negative will actually become HIV positive. The question arises as to what authority, legal or medical, allows a

1. At the time of the decision in 1996, courts in other jurisdictions used medical data that varied as to how long a time of negative testing was required before a plaintiff should feel assured he/she was not HIV positive. The window, in fact, appeared to range from six months to a year. (*Williamson v Waldman*, 150 NJ 232, 251, 696 A2d 14, 23 [1997].)

court to determine as a matter of law, that a plaintiff's fear of belonging to that 5% group is not genuine, or even reasonable.

Second, if legal standards are to emanate from medical statistics then a more interesting conclusion can be drawn from the majority's acceptance of *Brown*'s dictum that "the statistical probability of contracting HIV from a single needle stick, *assuming the needle was contaminated,* is approximately 0.3 to 0.5%." (225 AD2d at 47 [emphasis added].) According to those statistics only between 3 to 5 out of 1,000 plaintiffs stuck by a contaminated needle are likely to contract AIDS. The odds of contracting AIDS from a contaminated needle therefore are nowhere near as great as the odds that an HIV test may be inaccurate when it shows a plaintiff to be HIV negative. Yet the former fear of being one of 3 in 1,000 (a .3% chance) is indulged by the law, whereas a plaintiff's fear that he/she is one of 5 in 100 (a 5% chance) to be HIV positive despite tests showing an absence of HIV antibodies is deemed unreasonable, as a matter of law.

The inconsistency simply serves to underscore the axiom that statistical results do not speak to the actual mental state of the individuals being tested. Nor does the *Brown* court apply any legal standard found either in the common law or statute in determining that a plaintiff is not entitled, as a matter of law, to compensable damages for psychological harm beyond a fixed period of six months. I submit that no such legal standard exists. The *Brown* court and those jurisdictions that limit recovery for emotional distress to six months have, in effect, judicially, and improperly, imposed a "statute" of limitations on these emotional distress claims. Further, the existing case law in other jurisdictions to which the majority cites involves plaintiffs who, as opposed to the plaintiff in the instant case, were not conclusively determined to have been actually exposed to the AIDS virus.

The Supreme Court specifically rejected such limitation, observing that "[e]motional injuries may occur far removed in time and space from the negligent conduct that triggered them." (*Consolidated Rail Corporation v Gottshall*, 512 US 532, 545 [1994].) In *Gottshall*, the Court appeared as concerned as the majority about limiting liability and weeding out dishonest or spurious claims. But the Court further observed that, in effect, common-law limitations already exist and are "phrase[d]" in terms of proximate causation or in terms of duty owed to certain plaintiffs. (512 US at 546.)

In the case at bar, the defendants had a duty to Ms. Ornstein to protect her from harm caused by negligently discarded, contaminated needles. As a result of their breach of duty, Ms. Ornstein suffered emotional harm.[2] The defendants' conduct was the proximate cause of such emotional injury. However, they attempt to limit the plaintiff's recovery by imposing the "window of anxiety" theory on her damages. In so doing, they pigeonhole Ms. Ornstein's emotional injury as "AIDS phobia," using statistics about the physical aspects of the underlying disease to place a limitation on her emotional injury.

There is merit in Ms. Ornstein's assertion that traditional negligent infliction of emotional distress claims "should not be limited by a judicially imposed reasonableness period that takes from the jury the determination of the extent of plaintiff's damages." Or, as observed by one court:

> "the reaction of any claimant who receives a puncture wound from medical waste will be subjective. It will vary in character and intensity with the individual. . . .
>
> "Unavoidably, jury questions are created, not issues to be decided as a matter of law: was plaintiff's reaction a reasonable response to the stimulus? for how long? to what extent?" (*Williamson v Waldman*, 291 NJ Super 600, 605-606, 677 A2d 1179, 1181-1182 [1996], *mod* 150 NJ 232, 696 A2d 14 [1997].)

In the case at bar, Ms. Ornstein claims that her emotional distress is not limited to fear of contracting AIDS but that she suffered permanent psychological harm as a result of being punctured by a contaminated needle. Had the majority decided the case according to the "facts peculiar" to it, first, it could have considered that Ms. Ornstein can hardly be described as the type of AIDS-phobic individual whose emotional state, in the words of the majority, "does not correspond to scientifically proven realities" (at 187). Ms. Ornstein worked as a per diem nurse in the emergency room (ER) of Bellevue Hospital on weekends and holidays for 27 years. Although she was not asked at deposition, nor did she so state, there can be little doubt that during that time as an ER nurse she cared for many patients

---

2. This is accepted for the purposes of this appeal since defendants moved to dismiss only any claims for damages sustained more than six months after the needle-stick injury.

who suffered from AIDS. She was aware of the precautions she had to take and, before entering the room of the patient who was dying of AIDS, she put on protective gloves and a mask.

Ms. Ornstein testified at deposition to a traumatizing event. She described how the negligently discarded needle pierced through her double latex gloves like a "fishhook," entering and exiting her thumb, 1½ inches apart. She testified that she saw the needle was filled with blood, and she started crying hysterically. She further testified that the director of Bellevue's AIDS services was "extremely concerned because it was a fresh needlestick with fresh blood that had directly injected into me." Later, she was instructed to increase the dosage of the seven to eight viral medications she was prescribed to treat her HIV exposure because it was learned that the patient had stopped taking his medications, and therefore his viral load was exceptionally high.

As a result of the needle puncture, Ms. Ornstein never returned to work at Bellevue. Additionally, she quit her primary, daytime nursing job and took an administrative position so that she would not come into any contact with patients. Ms. Ornstein claimed that soon after the incident she began having panic attacks which prevented her from leaving the house, sleeping and speaking with people. She stated that she feared getting punctured by another contaminated needle.

The majority, without pointing to any medical or statistical evidence about the improbability of an ER nurse at Bellevue getting stuck by another contaminated needle, simply rejects, as a matter of law, any suggestion of an emotional distress claim that includes mental injury of a permanent, residual type. It asserts that a "claim for post-traumatic stress disorder is simply an end run around the six-month AIDS phobia restriction" (majority op at 186) and opines that allowing a claim beyond six months will simply render meaningless the six-month limitation on recovery.

Given its departure from common-law principles of tort liability, the six-month rule should be rendered meaningless. The "window of anxiety" approach is nothing more than a recently-contrived "compromise between the harshness of precluding total recovery for the fear of AIDS and allowing a fearful plaintiff a windfall." (Mark McAnulty, Casenote, *Shattering the "Reasonable Window of Anxiety"—Recovering Emotional Distress Damages for the Fear of Contracting AIDS*, 19 S Ill U LJ 661, 682 [1995].)

The majority's anxiety over the potential for limitless abuse reflects this, but is nevertheless exaggerated, and not novel. New York tort law has long held that

> "[a]lthough fraud, extra litigation and a measure of speculation are, of course, possibilities, it is no reason for a court to eschew a measure of its jurisdiction. 'The argument from mere expediency cannot commend itself to a Court of justice, resulting in the denial of a logical legal right and remedy in *all* cases because in *some* a fictitious injury may be urged as a real one.'" (*Battalla v State of New York*, 10 NY2d at 240-241, quoting *Green v T.A. Shoemaker & Co.*, 111 Md 69, 81, 73 A 688, 692 [1909].)

For the foregoing reasons, I dissent.

BUCKLEY, P.J., and TOM, J., concur with MARLOW, J.; GONZA-LEZ and CATTERSON, JJ., dissent in a separate opinion by CATTERSON, J.

Order, Supreme Court, New York County, entered January 9, 2004, reversed, on the law, without costs, defendants' motion to dismiss any claim for damages sustained more than six months after the incident granted, and the matter remanded for further proceedings.