Brown v New York Design Ctr., Inc. (2023 NY Slip Op 01228)

Brown v New York Design Ctr., Inc.

2023 NY Slip Op 01228

Decided on March 09, 2023

Appellate Division, First Department

Webber, J. 

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: March 09, 2023
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

Dianne T. Renwick
Troy K. Webber Anil C. Singh Julio Rodriguez III John R. Higgitt

Index No. 155964/14 Appeal No. 17203 Case No. 2022-01472 

[*1]Mabel Johanna Brown et al., Plaintiffs-Respondents-Appellants,
v
New York Design Center, Inc., Defendant-Appellant-Respondent, Newmark Knight Frank Global Management Services, LLC, et al., Defendants

Defendant appeals, and plaintiffs cross-appeal from an order of the Supreme Court, New York County (Gerald Lebovits, J.), entered on or about March 22, 2022, which, to the extent appealed and cross appealed from as limited by the briefs, granted defendant New York Design Center, Inc.'s motion for summary judgment dismissing the negligent infliction of emotional distress claim and denied the motion as to the negligence claim.

Traub Lieberman Straus & Shrewsberry LLP, Hawthorne (Nicole Boeckle and Erin L. O'Dea of counsel), for appellant-respondent.
German Rubenstein LLP, New York (Steven J. German of counsel), for respondents-appellants.

Webber, J. 

In this appeal, we are called upon to revisit our prior decisions regarding the showing necessary to sustain a cause of action for negligent infliction of emotional distress.
Plaintiffs Mabel Johanna Brown and "Jane Does 1-16" commenced this lawsuit, interposing causes of action pursuant to negligence, a violation of New York General Business Law § 395-B, intentional infliction of emotional distress, negligent infliction of emotional distress, and negligent hiring.
Plaintiffs all worked at 200 Lexington Avenue in Manhattan, a building owned by defendant New York Design Center (NYDC) that houses various showrooms for home finishes, fixtures, and furnishings. In April 2014, NYDC's electrician, while using the men's room on the sixth floor, discovered a camera with a recording device that was pointed through the wall and into a hole in the wall of a stall in the adjacent women's restroom. The hole in the women's restroom had been created by breaking tiles around a plumbing pipe. The New York City Police Department (NYPD) retrieved the device, which contained graphic videos of women using the bathroom. It was not determined if other videos existed or if any footage had been disseminated.
Plaintiffs all testified that they observed the hole in the bathroom wall prior to the discovery of the camera. One plaintiff testified that she had first seen the hole two to six months before the camera's discovery and complained to an employee of NYDC's building manager about the state of the bathroom, including that the tiles on the wall behind the toilet were broken and there was a hole. While she could not recall exactly when she complained about the hole, she stated, however, that it was definitely prior to the camera's discovery. A second plaintiff testified that she complained to her supervisor about the broken tiles and a third plaintiff testified that she complained to her colleagues about the condition of the bathroom, including the hole behind the toilet. A fourth plaintiff testified that before the camera was discovered she complained to her manager, who then complained to someone from the building, that there was a grapefruit sized hole behind one of the toilets. Other plaintiffs also testified as to their observation of the hole prior to its discovery; however, they stated that they did [*2]not lodge a complaint.
The videos do not show the faces of any of the women recorded. Of the 14 plaintiffs, 10 could not identify themselves in those portions of the videos retrieved by NYPD. The remaining four plaintiffs identified themselves in the videos based on underwear, skin color, shoes, legs, clothing, and other distinguishing characteristics.
One plaintiff testified that the women decided to file suit as "Jane Does" because they were extremely embarrassed and humiliated and did not "want their names being out in the press or on any kind of documents where people could find out it was them." She stated that they did not want others to know what had happened, especially because they did not know whether there were any additional videos and whether videos of them would ultimately be disseminated or appear on the Internet. Plaintiffs testified that when they learned of the videos they were upset, disgusted, mortified, distraught, felt violated, and ashamed. Plaintiffs all testified to paranoia and/or hypervigilance, many engaging in behavior such as habitually checking vents or looking for other spaces where cameras could be hidden, especially in public restrooms, dressing rooms, and hotel rooms.
Defendant NYDC moved for summary judgment dismissing the complaint, arguing that plaintiffs' negligence claim failed as they had not shown that defendant was on notice of the camera and because plaintiffs did not suffer any legally compensable injuries. With regard to the claim of negligent infliction of emotional distress, NYDC argued that its conduct was not outrageous, and plaintiffs did not fear for their safety—both necessary elements of such a claim.
Plaintiffs opposed, arguing that NYDC had actual and constructive notice of the peephole, and that they had adduced evidence of suffering from paranoia, shame, and feeling violated. Plaintiffs argued that General Business Law § 395-b creates an affirmative duty for the owners and managers of any premises regarding viewing devices and violating that duty can form the basis for a claim for negligent infliction of emotional distress.
Summary judgment was correctly denied as to the negligence claim (see Topor v State of New York, 176 Misc 2d 177, 182 [Ct Cl 1997]; see also Hering v Lighthouse 2001, LLC, 21 AD3d 449, 451 [2d Dept 2005]). The motion court correctly found that there was sufficient evidence that defendant was on notice of the hole and or the recording device. Plaintiffs testified that the hole was the size of a grapefruit and had been present two to six months prior to the inadvertent discovery of the device. There was also testimony that one of the plaintiffs complained to an employeeofdefendant's building manager regarding the hole prior to the discovery. As noted by Supreme Court, defendant conceded that its employees conducted regular inspections and cleanings of the restroom, yet defendant offered no testimony from those employees to refute allegations of constructive [*3]notice. Clearly, the condition as described, warranted further investigation to determine whether the hole was being used for surreptitious viewing, especially in that there was no other explanation as to why portions of tile were suddenly missing from the wall which was shared with the men's restroom.
Contrary to defendant's argument, the record supports a determination that plaintiffs sustained emotional injuries which are compensable in their negligence cause of action. Emotional injury is generally compensable only when it is the direct, rather than consequential, result of the breach of a duty owed (see Kennedy v McKesson Co., 58 NY2d 500, 506 [1983]; Probst v Cacoulidis, 295 AD2d 331, 332 [2d Dept 2002]). While there may be recovery for emotional trauma in the absence of physical injury, evidence must be produced that is sufficient to guarantee the genuineness of the claim (see Johnson v State of New York, 37 NY2d 378 [1975]; Kaufman v Physical Measurements, 207 AD2d 595 [3d Dept 1994]). Here, plaintiffs testified to humiliation, embarrassment, feelings of being violated, and paranoia. Their fears are certainly reasonable since it is not known whether additional copies of the videos exist, who may be in possession of the videos and whether the videos may ultimately be posted on any number of Internet sites. Plaintiffs' psychological traumas are readily and unquestionably understandable, evidencing "an especial likelihood of genuine and serious mental distress, arising from the special circumstances" (Johnson v State of New York, 37 NY2d at 382 [internal quotation marks omitted]; see also e.g. Landon v Kroll Lab. Specialists, Inc., 22 NY3d 1, 7-8 [2013]; Martinez v Long Is. Jewish Hillside Med. Ctr., 70 NY2d 697, 699 [1987]; Lando v State of New York, 39 NY2d 803 [1976]).
Relying upon this Court's decision in Sheila C. v Povich (11 AD3d 120, 130-131 [1st Dept 2004]), Supreme Court dismissed plaintiffs' claims for negligent infliction of emotional distress. In Sheila C., this Court concluded that the existence of extreme and outrageous conduct is a necessary element for a claim of negligent infliction of emotional distress. Other courts also adopted this conclusion.
Under New York law, a cause of action alleging intentional infliction of emotional distress "has four elements: (i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal connection between the conduct and injury; and (iv) severe emotional distress" (Howell v New York Post Co., 81 NY2d 115, 121 [1993]; see Klein v Metropolitan Child Servs., Inc., 100 AD3d 708, 710 [2d Dept 2012]; see also 2A NY PJI2d 3:6 at 54-55 [2014]).
While the Court of Appeals initially denied recovery for negligent infliction of emotional distress (Mitchell v Rochester Ry. Co., 151 NY 107, 110 [1896]), the Court overruled Mitchell, stating that "a rigorous application of [the] rule [prohibiting recovery [*4]for negligently caused emotional distress] would be unjust, as well as opposed to experience and logic" (Battalla v State of New York, 10 NY2d 237, 239 [1961]). The Court reasoned that Mitchell departed from the fundamental axiom of the common law that "a wrong-doer is responsible for the natural and proximate consequences of his misconduct" and that "one may seek redress for every substantial wrong" (Battalla at 240 [internal quotation marks omitted]).
Although it has been recognized that there may be recovery for negligent infliction of emotional distress, the elements necessary for recovery has developed through case law. This Department's case law has held that both intentional infliction of emotional distress and negligent infliction of emotional distress require a showing of extreme and outrageous conduct.
A review of Sheila C. as well as the authorities relied upon for this stated proposition, reveal that they all ultimately rely, either directly or indirectly, upon cases that deal exclusively with intentional infliction of emotional distress or where there are allegations of both (Murphy v American Home Prods. Corp., 58 NY2d 293, 303 [1983]; Acquista v New York Life Ins. Co., 285 AD2d 73, 83 [1st Dept 2001]; Dillon v City of New York, 261 AD2d 34, 41 [1st Dept 1999]). There is no stated rationale as to why extreme and outrageous conduct would be a required element for both an intentional act as well as a negligent act.
As such, we now hold that extreme and outrageous conduct is not an essential element of a cause of action to recover damages for negligent infliction of emotional distress.
This holding is in line with recent decisions of the Second, Third and Fourth Departments.[FN1] In Taggart v Costabile (131 AD3d 243 [2d Dept 2015]), the Second Department clarified that extreme and outrageous conduct is not a necessary element to recover damages for negligent infliction of emotional distress. There, the plaintiffs argued that they sustained emotional distress when two masked intruders broke into their home, threatened the plaintiff-husband causing plaintiff husband to shoot the two intruders and accidentally shoot the plaintiffs' dog. The plaintiffs commenced action against the owner of the adjacent property to recover damages for nuisance and negligent infliction of emotional distress, inter alia, arguing that the property owner created the nuisance or should have known that objectionable activities would take place on the property when they rented the property to others.
In Stephanie L. v House of the Good Shepherd (186 AD3d 1009 [4th Dept 2020]), the Fourth Department, relying in part on Taggart, stated that extreme and outrageous conduct is not an essential element of a cause of action to recover damages for negligent infliction of emotional distress. There, the plaintiffs commenced action against the defendant foster child placement program administrator alleging negligent infliction of emotional distress based upon the program's [*5]alleged failure to disclose to the plaintiffs, the complete behavioral history of a foster child, whom the plaintiffs accepted into their home and who subsequently, allegedly abused the plaintiffs' biological child.
More recently, in Doe v Langer (206 AD3d 1325 [3d Dept 2022]), the Third Department affirmed the motion court's decision denying dismissal of the plaintiff's cause of action for negligent infliction of emotional distress due to the plaintiff's failure to allege extreme and outrageous conduct. In doing so, the Court noted that "[o]ther courts have now clarified that extreme and outrageous conduct is not an essential element of a cause of action to recover damages for negligent infliction of emotional distress" (Doe v Langer, 206 AD3d at 1331 [ internal quotation marks omitted]).
Finally, this holding is also consistent with the Court of Appeals decision in Ornstein v New York City Health & Hosps. Corp. (10 NY3d 1 [2008], revg 27 AD3d 180 [1st Dept 2006]). There, the defendant hospital's alleged negligent disposal of hypodermic needles caused the plaintiff, a nurse, to be stuck by a hypodermic needle and exposed to human immunodeficiency virus (HIV). The plaintiff claimed negligent infliction of emotional distress as a result of an unknown future diagnosis for the virus. The defendants moved to dismiss that part of the plaintiff's claim that sought damages for emotional distress the plaintiff suffered more than six months after the needle-stick incident. The Court of Appeals reversed this Court's decision limiting damages to six months, since testing negative for HIV at the six-month mark would be scientifically conclusive evidence that the plaintiff did not contract the disease from the event complained of. In its decision, the Court of Appeals made no mention of a requirement that the plaintiff show extreme and outrageous conduct on the part of the defendant hospital. Notably, it is doubtful that under this Department's case law, the plaintiff would have been found to have established extreme and outrageous conduct on the part of the defendant hospital.
We now clarify that a breach of a duty of care resulting directly in emotional harm is compensable even though no physical injury occurred(Kennedy v McKesson Co., 58 NY2d at 504; see Ornstein,10 NY3d at 6; Baumann v Hanover Community Bank, 100 AD3d 814, 816 [2d Dept 2012]; Cleary v Wallace Oil Co., Inc., 55 AD3d 773, 775 [2d Dept 2008]). However, the mental injury must be "a direct, rather than a consequential, result of the breach"(Kennedy v McKesson Co.,58 NY2d at 506), and the claim must possess "some guarantee of genuineness" (Ferrara v Galluchio, 5 NY2d 16, 21 [1958]; see Ornstein, 10 NY3d at 6; Karin K. v Four Winds Hosp., 64 AD3d 686, 687 [2d Dept 2009], lv denied 13 NY3d 711 [2009]; DiStefano v Nabisco, Inc., 2 AD3d 484, 485 [2d Dept 2003]).
To the extent that a number of this Court's past decisions have indicated that extreme and outrageous conduct is a required element [*6]in order to sustain a cause of action for negligent infliction of emotional distress, those cases should no longer be followed.
Accordingly, plaintiffs' claim for negligent infliction of emotional distress is reinstated.
Accordingly, the order of the Supreme Court, New York County (Gerald Lebovits, J.), entered on or about March 22, 2022, which, to the extent appealed and cross-appealed from as limited by the briefs, granted defendant New York Design Center, Inc.'s motion for summary judgment dismissing the negligent infliction of emotional distress claim and denied the motion as to the negligence claim, should be modified, on the law, to reinstate the negligent infliction of emotional distress claim, and otherwise affirmed, without costs.
Order Supreme Court, New York County (Gerald Lebovits, J.), entered on or about March 22, 2022, which, to the extent appealed and cross-appealed from as limited by the briefs, granted defendant New York Design Center, Inc.'s motion for summary judgment dismissing the negligent infliction of emotional distress claim and denied the motion as to the negligence claim modified, on the law, to reinstate the negligent infliction of emotional distress claim, and otherwise affirmed, without costs.
Opinion by Webber, J. All concur.
Renwick, J.P., Webber, Singh, Rodriguez, Higgitt, JJ.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: March 9, 2023

Footnotes

Footnote 1: In Tigano v United States, the Court in sustaining the claim for negligent infliction of emotional distress, stated "the Court notes that outrageous conduct is not an essential element of an NIED claim. While certain courts in this district cited by both Plaintiff and Defendants previously held that '[u]nder New York law, the tort[ ] of . . . negligent infliction of emotional distress [requires, inter alia,] extreme and outrageous conduct,' New York courts have since disavowed the 'extreme and outrageous conduct' requirement' " (527 F Supp 3d 232, 249 [ED NY 2021] [citations omitted].